**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS M. PETHTEL,** | : | |
| **Plaintiff,** | : | **Case No. 2:06-cv-799** |
| **v.** | : | **Judge Holschuh** |
| **WASHINGTON COUNTY** | : | **Magistrate Judge Kemp** |
| **SHERIFF'S OFFICE, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Following his arrest, Plaintiff Thomas Pethtel filed suit against the Washington County

Sheriff's Office, Sheriff Robert Schlicher, and Deputies James Jobes and Patrick Gherke.  An

Amended Complaint adds Washington County as a defendant.  Pethtel seeks relief under 42

U.S.C. § 1983 for alleged violations of his constitutional rights.  He also asserts three Bivens

claims, and alleges two violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1962.  This matter is currently before the Court on Defendants' motion to

dismiss the original complaint for failure to state a claim upon which relief can be granted

(Record at 3), and on Defendants' motion to dismiss the Amended Complaint (Record at 14).

**I.      Background**

On September 8, 2003, Pethtel was involved in an altercation with a neighbor.

Washington County Sheriff's Deputies James Jobes and Patrick Gherke arrived at Pethtel's

property at about 8:00 that night.  Pethtel claims that they searched his truck without his consent

and found a firearm and ammunition.  They charged him with using a weapon while intoxicated

and with criminal trespassing.  The officers conducted no field sobriety tests and performed no

other tests to determine whether Pethtel was, in fact, intoxicated.  At approximately 11:00 that evening, after being released from jail, Pethtel went to Marietta Memorial Hospital and asked to have his blood alcohol level measured.  Laboratory results showed that his blood alcohol content was .023.

Pethtel pleaded not guilty and filed a motion to suppress the evidence found during the warrantless search of his truck.  The court held a hearing on December 22, 2003.  Deputies Jobes and Gherke testified that Pethtel was intoxicated on the night in question and that Pethtel's neighbor claimed that Pethtel had brandished a firearm during the altercation.  They also testified that Pethtel had consented to a search of his truck.  Pethtel's wife, however, testified that she was present when the deputies arrived and she never heard them ask permission to search the truck and never heard her husband consent to such a search.  Pethtel testified that he was not intoxicated that evening and had not consented to the search.  At the conclusion of the hearing, the court denied Pethtel's motion to suppress.  On March 4, 2004, he entered a plea of no contest to a reduced charge of disorderly conduct, and was fined $100 plus court costs.

According to Pethtel, on or about February 13, 2005, he and his son met with Jobes, who was then working as a police officer for Belpre, Ohio.  During a tape-recorded conversation, Jobes allegedly admitted that he did not believe that Pethtel was intoxicated on the night of the arrest.  Jobes stated that Pethtel told him that there was a gun in the truck, but did not state that Pethtel consented to a search.  Jobes also allegedly admitted that he did not want to arrest Pethtel that evening, and that he had lied at the hearing on the motion to suppress so that his testimony matched Gherke's "because we have to support each other."

2

On September 20, 2006, Pethtel filed suit against the Washington County Sheriff's Office, Sheriff Schlicher, and Deputies Jobes and Gherke.  Count 1 seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of Pethtel's Fourth, Fifth and Fourteenth Amendment rights. Pethtel maintains that Defendants violated his rights by searching his truck without his consent, lying at the hearing on the motion to suppress, and failing to inform prosecutors of exculpatory information.  Count 2 also seeks relief under § 1983, alleging that Defendants conspired to violate his constitutional rights.  Counts 3, 4, and 5, entitled "Constitutional Tort Claims," are allegedly brought under the authority of Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  Count 3 alleges an unlawful search of the truck, Count 4 alleges arrest without probable cause, and Count 5 alleges that Defendants violated Pethtel's Fifth Amendment rights when they gave false testimony at the hearing on the motion to suppress and failed to tell prosecutors about the existence of exculpatory information.  Counts 6 and 7 allege that Defendants participated in a pattern of racketeering activity, and conspired to engage in a pattern of racketeering activity, in violation of RICO, 18 U.S.C. §§ 1962(c) and (d).

On October 19, 2006, Defendants moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiff responded by filing a memorandum contra, along with an Amended Complaint.  The Amended Complaint is essentially identical to the original complaint, except that it adds Washington County as a party defendant.  Defendants filed a reply brief.  Defendants also filed a motion to dismiss the Amended Complaint, incorporating all arguments made in the first motion to dismiss and arguing, in addition, that Pethtel had not properly sought leave to amend his complaint.

II.     **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998).  A complaint need not set down in detail all the particularities of a plaintiff's claim.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original).  Bare assertions of legal conclusions are insufficient.  See id.; Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993).  Likewise, "a formulaic recitation

of the elements of a cause of action" is not enough.  <u>Bell Atlantic Corp. v. Twombly</u>, -- U.S. --,

127 S.Ct. 1955, 1965 (2007).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe

the complaint in the light most favorable to the plaintiff and accept all well-pleaded material

allegations in the complaint as true.  <u>See</u> <u>Scheuer</u>, 4l6 U.S. at 236; <u>Arrow v. Federal Reserve

Bank of St. Louis</u>, 358 F.3d 392, 393 (6th Cir. 2004); <u>Mayer</u>, 988 F.2d at 638.  The Court will

indulge all reasonable inferences that might be drawn from the pleading.  <u>See</u> <u>Saglioccolo v.

Eagle Ins. Co.</u>, 112 F.3d 226, 228 (6th Cir. 1997).  However, it will not accept conclusions of

law or unwarranted inferences cast in the form of factual allegations.  <u>See</u> <u>Gregory v. Shelby

County</u>, 220 F.3d 433, 446 (6th Cir. 2000); <u>Lewis</u>, 135 F.3d at 405-06.

The Court will grant a motion for dismissal under Rule 12(b)(6) if there is an absence of

law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the

face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not

have a claim.  <u>Little v. UNUM Provident Corp.</u>, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002)

(citing <u>Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 697 (6th Cir. 1978)).

**III.    Analysis**

**A.      Motion to Dismiss Amended Complaint**

The Court turns first to Defendants' motion to dismiss the Amended Complaint.  As

noted above, the Amended Complaint differs from the original complaint only in that it adds

Washington County as a party defendant.[1]  Defendants contend that the Amended Complaint

should be dismissed because Pethtel failed to follow the proper procedures for adding a party.

At issue is the interplay between Federal Rule of Civil Procedure 15(a) and Federal Rule of Civil

Procedure 21.

> Rule 15(a), which governs amendments of pleadings, states in pertinent part:

>> A party may amend the party's pleading once as a matter of course
>> at any time before a responsive pleading is served or, if the
>> pleading is one to which no responsive pleading is permitted and
>> the action has not been placed upon the trial calendar, the party
>> may so amend it at any time within 20 days after it is served.
>> Otherwise a party may amend the party's pleading only by leave of
>> court or by written consent of the adverse party; and leave shall be
>> freely given when justice so requires.

Fed. R. Civ. P. 15(a).  In their motion to dismiss the Amended Complaint, Defendants argue that

because they had already filed a motion to dismiss, Pethtel was required to seek leave of court or

to obtain Defendants' written consent prior to filing his Amended Complaint.

In his memorandum contra, Pethtel notes that Defendants have not yet filed an answer,

and that a motion to dismiss does not constitute a "responsive pleading" under Rule 15(a).  See

Lycan v. City of Lebanon, 213 F.R.D. 305, 306 (S.D. Ohio 2002); Youn v. Track, Inc., 324 F.3d

409, 415 n.6 (6th Cir. 2003).  Pethtel argues that because no responsive pleading has been filed,

he was not required to seek leave of court or Defendants' written consent prior to filing his

Amended Complaint.

---

[1]  This amendment was clearly prompted by Defendants' argument, in its first motion to
dismiss, that the Washington County Sheriff's Office was not a legal entity subject to suit.

Apparently conceding that Pethtel is correct on this point, Defendants, in their reply brief, argued that this issue is governed not by Rule 15, but rather by Rule 21 which states, in pertinent part, that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  Defendants argue that, regardless of whether a responsive pleading has been filed, plaintiffs seeking to drop or add a party must seek leave of court.  Some older cases from other district courts within the Sixth Circuit have held exactly that.  See International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. AFL-CIO, 32 F.R.D. 441, 442 (E.D. Mich. 1963) (holding that because Rule 21 is more specific than Rule 15, Rule 21 governs whenever a proposed amendment seeks to effect a change in parties); Keller v. University of Mich., 411 F. Supp. 1055, 1057 (E.D. Mich. 1974) (holding that the proper procedure for adding parties, regardless of whether responsive pleading has been filed, is to seek leave of court).

However, more recent cases from within the Southern District of Ohio have held that the right to amend a complaint before a responsive pleading is filed is absolute, and no leave of court is needed, even to add parties.  See Mills v. Mills, 790 F. Supp. 172, 174 (S.D. Ohio 1992) (holding that because no answer had been filed, plaintiff was entitled, pursuant to Rule 15(a), "as a matter of course" to amend her complaint to add a defendant); Paglioni & Assoc. v. WinnerComm, Inc., No. 2:06-cv-276, 2006 WL 3196356, at *2 (S.D. Ohio Nov. 2, 2006) (denying motion for sanctions where amended complaint added a new defendant, and noting that "Paglioni was not required to seek leave of court or WinnerComm's consent before filing its Amended Complaint and, indeed, had the absolute right to amend because WinnerComm had not

7

yet filed a responsive pleading.").  The issue does not appear to have been resolved by the Sixth

Circuit.  See Ludwig v. Board of Tr. of Ferris State Univ., 123 F.3d 404, 411-12 (6th Cir. 1997)

(declining to decide issue because case could be decided on other grounds).

Assuming *arguendo* that Defendants are correct that Rule 21 required Pethtel to seek

leave of court prior to filing an amended complaint adding Washington County as a defendant,

the Court nevertheless denies Defendants' motion to dismiss the Amended Complaint on these

procedural grounds.  The Amended Complaint was filed in response to Defendants' first motion

to dismiss; Defendants had argued that the Washington County Sheriff's Office was not a legal

entity capable of being sued.  The Amended Complaint seeks only to fix that problem by adding

Washington County as a defendant.  The two entities are clearly related and Defendants fail to

explain how Pethtel's failure to seek leave of court or Defendants' written consent unfairly

prejudices them. Under these circumstances, had Pethtel filed a motion for leave to file the

Amended Complaint, the Court would have granted that motion since Rule 15(a) requires that

leave to amend be "freely given when justice so requires."  For these reasons, the Court rejects

Defendants' argument that Plaintiff's failure to follow the proper procedures for filing his

Amended Complaint warrants dismissal.

### B.    Sufficiency of Allegations

Because an amended complaint supersedes the original complaint, the filing of an

amended complaint normally moots a motion to dismiss the original complaint.  However, in this

case, because the Amended Complaint is substantially identical to the original complaint except

for the addition of Washington County as a defendant, and because Defendants, in their motion

to dismiss the Amended Complaint, specifically adopted all arguments contained in the first motion to dismiss, the Court turns now to those arguments.

### 1. Proper Parties

Defendants argue that all claims against the Washington County Sheriff's Office must be dismissed because, under Ohio law, a county sheriff's office is not a legal entity subject to suit. See Barrett v. Wallace, 107 F. Supp. 2d 949, 954-55 (S.D. Ohio 2000) (citing Batchik v. Summit County Sheriff's Office, No. 13783, 1989 Ohio App. LEXIS 877, at *1 (Ohio Ct. App. Mar. 15, 1989)). It appears that Plaintiff concedes this argument and, as noted above, has corrected this problem by filing an Amended Complaint that adds Washington County as a defendant. The Court therefore grants Defendants' motion to dismiss the claims against the Washington County Sheriff's Office.

Defendants also argue that all claims brought against Sheriff Schlicher and against Deputies Jobes and Gherke in their official capacities should be dismissed as redundant. The Court agrees. As the Supreme Court noted in Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), a § 1983 case, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." The same is true for RICO actions. See Call v. Watts, No. 97-5406, 1998 WL 165131 (6th Cir. April 2, 1998). Because Washington County has now been named as a defendant, the claims brought against the county defendants in their official capacities are redundant and will be dismissed. See Von Herbert v. City of St. Clair Shores, 61 Fed. Appx. 133, 140 n.4 (6th Cir. 2003) (holding that official capacity claims were redundant because they were subsumed in claims against city); Gray v.

City of Cincinnati, No. 1:03CV119, 2006 WL 2193187, at *8 (S.D. Ohio Aug.1, 2006) (granting

summary judgment on official capacity claims because they were redundant).

### 2.  § 1983 and Bivens Claims (Counts 1-5)

Counts 1 and 2 of the Amended Complaint seek relief under 42 U.S.C. § 1983.  In Count

1, Plaintiff alleges that Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights

by: (1) arresting him without probable cause; (2) conducting a warrantless search of his truck

without his consent; (3) giving false testimony at the hearing on the motion to suppress evidence;

and (4) failing to turn exculpatory information over to the prosecutor.  Count 2 alleges that

Defendants conspired to violate his constitutional rights.  Counts 3, 4, and 5 of the Amended

Complaint allege the same constitutional violations by the same Defendants, but are purportedly

brought under the authority of Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).[2]

Defendants argue that all of these claims must be dismissed because they are barred by: (1) the

doctrine established in Heck v. Humphrey, 512 U.S. 477 (1994); and (2) the applicable statute of

limitations.

### a.  Heck v. Humphrey

In Heck v. Humphrey, 512 U.S. 477 (1994), a state prisoner sought to challenge the

constitutionality of his conviction by filing a § 1983 suit in federal court instead of filing a

petition for a writ of habeas corpus.  Noting that "civil tort actions are not appropriate vehicles

---

[2]  While 42 U.S.C. § 1983 provides an avenue of recovery for constitutional violations by *state* actors, Bivens provides a parallel avenue of recovery for constitutional violations by *federal* actors.  Because Defendants in this case are clearly not federal actors, Plaintiff's reliance on Bivens as the basis for three separate "constitutional tort" claims is very puzzling.  Nevertheless, Defendants have not moved to dismiss these claims on any grounds other than statute of limitations.

for challenging the validity of outstanding criminal judgments," the Supreme Court held that when a § 1983 claim calls into question the validity of the plaintiff's conviction or sentence, the claim is not cognizable under § 1983 until the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  Id. at 486-87.  The Supreme Court then crafted a deferred accrual rule, holding that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."  Id. at 489-90. These same principles apply to Bivens claims.  See Ruff v. Runyon, 258 F.3d 498, 502 (6th Cir. 2001).

Defendants argue that because Plaintiff's § 1983 and Bivens claims call into question the validity of his conviction, and because his sentence has not been invalidated, his claims are barred under the rule established in Heck.  Because Defendants raised this argument for the first time in their reply brief and Plaintiff had no chance to respond, normally the Court would not consider it at all.   See Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc., 436 F.3d 662, 676 (6th Cir. 2006) (a district court properly declines to consider an issue raised for the first time in a reply brief).

In this case, however, a brief discussion of Heck is warranted because Plaintiff's memorandum in opposition to Defendants' motion to dismiss relies on Ruff and on Shamaeizadeh v. Cunigan, 182 F.3d 391 (6th Cir. 1999), both which rely on Heck.  In Shamaeizadeh, the plaintiff sought relief under § 1983 for an illegal search and seizure. Defendants argued that the suit was time-barred because the claims accrued on the date of the

arrest.  The Sixth Circuit disagreed, finding that "the concerns of <u>Heck</u> apply pre-conviction as well as post-conviction."  <u>Id.</u> at 398.  It therefore applied <u>Heck</u>'s deferred accrual rule, and held that the claims did not accrue until the criminal charges had been dismissed.

In <u>Ruff</u>, a confidential informant implicated plaintiffs in a drug trafficking case.  After they were indicted, they agreed to plead guilty to lesser charges.  A couple of years later, the informant admitted that he had falsely implicated them.  On April 4, 1995, they filed a motion for a new trial, and the state court granted their motion.  On March 26, 1996, the prosecutor decided to drop all charges against them instead of retrying them.  On August 28, 1997, they filed a § 1983 action.  At issue was when the statute of limitations began to run.  The district court held that the claims were time-barred.  According to the district court, the claims accrued on April 4, 1995 because that is when the plaintiffs knew that the indictments were based on false information.  The Sixth Circuit, however, in reliance on <u>Shamaeizadeh</u> and <u>Heck</u>, held that the statute of limitations did not begin to run until March 26, 1996, the date the prosecutor dismissed the charges, and that the claims were, therefore, timely filed.  <u>Ruff</u>, 258 F.3d at 501-02.

The holding in <u>Shamaeizadeh</u> has been severely undermined by the Supreme Court's recent decision in <u>Wallace v. Kato</u>, 127 S.Ct. 1091 (2007).  In <u>Wallace</u>, the Court held that the statute of limitations on a § 1983 claim of false arrest accrues on the date the plaintiff appears before a magistrate and is arraigned on the charges filed against him.  <u>Id.</u> at 1097.  The Court also held that <u>Heck</u>'s deferred accrual rule does not apply when the cause of action accrues before a criminal conviction has taken place.  <u>Id.</u> at 1098.  It rejected a rule "that an action which

would impugn <u>an anticipated future conviction</u> cannot be brought until that conviction occurs and is set aside." <u>Id.</u> (emphasis in original).  The Sixth Circuit has recently acknowledged that <u>Wallace</u> "effectively abrogated the holding in <u>Shamaeizadeh</u>" and "clarified that the <u>Heck</u> bar has no application in the pre-conviction context." <u>Fox v. DeSoto</u>, No. 06-5930, 2007 U.S. App. LEXIS 12847, at *11-13 (6th Cir. June 4, 2007).

Because, as discussed in greater detail below, Plaintiff's § 1983 and <u>Bivens</u> claims accrued prior to the date he pleaded no contest to the reduced charge of disorderly conduct, the <u>Heck</u> bar does not apply.  Moreover, because Plaintiff's sentence consisted of a fine rather than imprisonment, a habeas remedy was never available to him.  As the Sixth Circuit has noted, five justices of the Supreme Court are of the belief that the <u>Heck</u> bar, requiring a plaintiff to have his sentence or conviction invalidated before filing a § 1983 suit, does not apply when the plaintiff has not been sentenced to a term of imprisonment.  <u>See Fox v. VanOosterum</u>, 176 F.3d 342, 352 n.8 (6th Cir. 1999).  <u>See also Johnson v. Freeburn</u>, 144 F. Supp. 2d 817, 827 (E.D. Mich. 2001).  For all of these reasons, the Court rejects Defendants' argument that Plaintiff's claims are barred by <u>Heck</u>.

### b.   Statute of Limitations

In the alternative, Defendants argue that Plaintiff's § 1983 claims and <u>Bivens</u> claims are barred by the statute of limitations.  The Court agrees.  Because § 1983 contains no statute of limitations, federal courts borrow the forum state's statute of limitations governing personal injury actions.  <u>See Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985).  The parties agree that, in Ohio,

§ 1983 and <u>Bivens</u> claims are governed by a two-year statute of limitations in accordance with

Ohio Revised Code § 2305.10. <u>See</u> <u>Ruff</u>, 258 F.3d at 500.

The question in dispute is when that two-year statute of limitations began to run on each

of Plaintiff's claims. Federal law governs this question. <u>See</u> <u>Wallace</u> 127 S.Ct. at 1095-96;

<u>Ruff</u>, 258 F.3d at 500. As the Supreme Court noted in <u>Wallace</u>, generally a claim accrues and

the limitations period begins to run when "the plaintiff has 'a complete and present cause of

action,' . . . that is, when 'the plaintiff can file suit and obtain relief.'" 127 S.Ct. at 1095

(internal citations omitted).

> "Under the traditional rule of accrual . . . the tort cause of action
> accrues, and the statute of limitations commences to run, when the
> wrongful act or omission results in damages. The cause of action
> accrues even though the full extent of the injury is not then known
> or predictable." 1 C. Corman, Limitation of Actions § 7.4.1, pp.
> 526-527 (1991) (footnotes omitted); see also 54 C.J.S., Limitations
> of Actions § 112, p. 150 (2005).

<u>Wallace</u>, 127 S.Ct. at 1097.

The Sixth Circuit's "discovery rule" provides that the statute of limitations begins to run

"when plaintiffs knew of or should have known of the injury which forms the basis of their

claims." <u>Ruff</u>, 258 F.3d at 500. "A plaintiff has reason to know of his injury when he should

have discovered it through the exercise of reasonable diligence." <u>Cooey v. Strickland</u>, 479 F.3d

412, 416 (6th Cir. 2007) (quoting <u>Sevier v. Turner</u>, 742 F.2d 262, 273 (6th Cir. 1984)). The

relevant inquiry is "what event should have alerted the typical lay person to protect his or her

rights.'" <u>Roberson v. Tenn.</u>, 399 F.3d 792, 794 (6th Cir. 2005) (quoting <u>Hughes v. Vanderbilt</u>

<u>Univ.,</u> 215 F.3d 543, 548 (6th Cir. 2000)).

In their motion to dismiss, Defendants argue that, at the very latest, Plaintiff knew of his alleged injury on March 4, 2004 when, following the court's denial of his motion to suppress evidence, he pleaded no contest to the reduced charge of disorderly conduct and was fined $100 plus court costs.  Since Plaintiff did not file his complaint until September 20, 2006, well over two years after the claims accrued, Defendants maintain that the claims are time-barred.  Plaintiff denies that his claims are untimely.  He argues that the statute of limitations did not begin to run until February 13, 2005, when he met with Defendant Jobes and learned of the false testimony Jobes and Gherke gave at the hearing on the motion to suppress.

The statute of limitations does not necessarily begin to run at the same time for all of the alleged constitutional violations.  Therefore, for each of Plaintiff's claims, the Court must determine when the cause of action accrued.

### (i)        Fourth Amendment Claims

As noted earlier, Plaintiff alleges that Defendants violated his Fourth Amendment rights by arresting him without probable cause, and by conducting a warrantless search of his vehicle without his consent.  In Wallace, the Supreme Court held that a claim of false arrest accrues when the plaintiff appears before a magistrate and is arraigned on the charges filed against him. 127 S.Ct. at 1097.

Plaintiff argues that Wallace is distinguishable because, unlike Wallace, who knew of his injury at the time of his arrest, Plaintiff did not know of his injury until February 13, 2005, when he met with Jobes.  As Defendants note, this argument is simply not plausible in light of the fact that, according to the Amended Complaint, Plaintiff, immediately upon being released from jail

15

on September 8, 2003, asked to have his blood alcohol content tested because he did not believe

that the officers had probable cause to arrest him for using a weapon while intoxicated.  He

clearly knew of his injury that very evening.  Plaintiff was arraigned on September 9, 2003.  Am.

Compl. ¶ 19.  Therefore, pursuant to the holding in Wallace, the statute of limitations on his false

arrest claim began to run on that date.  Because he did not file suit until September 20, 2006,

more than three years later, his claim for false arrest is time-barred.

Plaintiff's other Fourth Amendment claim, based on the warrantless search of his truck

without his consent, is also time-barred.  Plaintiff had a complete and present cause of action on

September 8, 2003, the date of the search.  Moreover, on November 6, 2003, he filed a motion to

suppress the evidence found during that allegedly illegal search.  Plaintiff's own conduct

forecloses any finding that he did not know of his injury until February 13, 2005.  Because the

statute of limitations began to run on September 8, 2003, and Plaintiff did not file suit until

September 20, 2006, this claim is also time-barred.

### (ii)      Fifth Amendment Claims

Plaintiff also alleges that Defendants violated his Fifth Amendment rights by: (1) lying at

the December 22, 2003 hearing on the motion to suppress evidence; and (2) by failing to turn

exculpatory evidence over to the prosecutor, in violation of Brady v. Maryland, 373 U.S. 83

(1963).[3]  Again, Defendants contend that these claims accrued no later than March 4, 2004, when

---

[3]  Specifically, Plaintiff alleges that Defendants failed to tell the prosecutor that they had searched the truck without a warrant, that Deputy Jobes did not believe that Plaintiff was intoxicated on the night in question or that an arrest was warranted, and that Jobes and Gherke gave false testimony at the hearing on the motion to suppress.  (Am. Compl. ¶ 62).

Plaintiff pleaded no contest to a charge of disorderly conduct and was fined $100 plus court costs. They therefore argue that Plaintiff's complaint, filed September 20, 2006, is untimely. Plaintiff, in contrast, again argues that since he did not learn that his Fifth Amendment rights had been violated until February 13, 2005, when he met with Jobes, his claims were timely filed.

In the Court's view, Plaintiff's Fifth Amendment claims accrued on December 22, 2003, the date Jobes and Gherke testified at the hearing and the court, finding their testimony to be more credible than Plaintiff's, denied Plaintiff's motion to suppress. According to the Amended Complaint, at that hearing, Jobes and Gherke both testified that, on the night on the arrest, Plaintiff was under the influence of alcohol and that he consented to a search of his vehicle. In contrast, Plaintiff testified that he was not intoxicated during the incident with his neighbor, and he and his wife both testified that Plaintiff did not consent to a search of the truck.

In Friedman v. Presser, 929 F.2d 1151 (6th Cir. 1991), the Sixth Circuit held that "[a]ny fact that should excite [the plaintiff's] suspicion is the same as actual knowledge of his entire claim." Id. at 1160 (quoting Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975)). In the instant case, because the officers' testimony was diametrically opposed to his and his wife's, Plaintiff must have immediately suspected that the officers had lied, both to the prosecutor and to the court. On the date of the hearing, he therefore had a "complete and present cause of action" and could have filed suit.

Certainly Jobes' alleged admission on February 13, 2005 provided Plaintiff with evidence to support his Fifth Amendment claims. However, this does not change the fact that Plaintiff knew or should have known of the alleged constitutional injuries and their cause on

17

December 22, 2003.  The statute of limitations began to run then, despite the fact that, at that time, he had no solid evidence to support his claims.  See Krygoski Constr. Co. v. Johnson, No. 2:01-cv-22, 2002 WL 1492204, at *3-4 (W.D. Mich. April 23, 2002) (holding that company's suspicions of wrongdoing started the clock running, and that the claims accrued at the time the company knew it was injured, not when it finally had enough "hard and fast evidence" to support its claims.).[4]

Because Plaintiff's Fifth Amendment claims accrued on December 22, 2003, but Plaintiff did not file his complaint until September 20, 2006, they are barred by the statute of limitations.

### (iii)    Conspiracy

In Count 2 of the Amended Complaint, Plaintiff alleges that Defendants conspired to violate his constitutional rights and that, in furtherance of their goals, maintained "a code of silence and support for illegal acts of law enforcement."  Am. Compl. ¶ 44.  This claim is also barred by the statute of limitations.  Even if the claim is read to allege that the conspiracy continued until February 13, 2005, the Sixth Circuit has held that the continuance of a conspiracy beyond the date of injury does not extend the statute of limitations in a § 1983 action. See LRL Prop. v. Portage Metro Hous. Auth., 55 F.3d 1097, 1106 (6th Cir. 1995); McCune v. City of Grand Rapids, 842 F.2d 903, 906 (6th Cir. 1988).  Because Plaintiff's injury occurred, at the very latest, on March 4, 2004, when he pleaded no contest to disorderly conduct and was

---

[4]  Moreover, while Plaintiff states in his memorandum in opposition to the motion to dismiss that he exercised "due diligence" in discovering that Jobes and Gherke fabricated their testimony, there is no indication that he did anything between December 22, 2003 and February 13, 2005 to investigate his suspicions.

fined $100 plus court costs, and because he did not file suit until September 20, 2006, his conspiracy claim is time-barred.

### 3. RICO Claims (Counts 6 and 7)

Counts 6 and 7 of the Amended Complaint allege violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d).[5]  That statute states, in pertinent part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

Plaintiff's RICO claims are brought against the Washington County Sheriff's Office, and against Jobes and Gherke in their official and individual capacities.  In his Amended Complaint, Plaintiff alleges that Jobes and Gherke "are, were, or may have been employed by an enterprise" and that the "Washington County Sheriff's Office is an enterprise."  Am. Compl. ¶¶ 69, 76.  He further alleges that:

> Jobes and Gherke in their individual capacities formed an enterprise and conspired with one another to injure Plaintiff. Defendant Jobes and Gherke participated in a pattern of racketeering activity while conducting the enterprise's affairs. Defendants Jobes and Gherke engaged in a code of silence, supported one another, and engaged in giving perjured and false testimony at Plaintiff's motion to suppress hearing.

---

[5]  18 U.S.C. § 1964(c) creates a private right of action for individuals injured in their business or property by reason of a violation of § 1962, and provides for treble damages and reasonable attorney fees.

Id.

### a.    Against Municipality

Defendants argue that the RICO claims against the Washington County Sheriff's Office and the claims against Jobes and Gherke in their official capacities should be dismissed for failure to state a claim upon which relief can be granted.  The Court agrees.

Section 1962(c) of Title 18 United States Codes makes it unlawful "for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Accordingly, only a "person" may violate 18 U.S.C. 1962(c).  For purposes of the RICO statute, a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

While Washington County and its Sheriff's Office may be entities capable of holding an interest in property, the Sixth Circuit has held that a county is not a "person" subject to liability under RICO because a county lacks "the capacity to form the *mens rea* requisite to the commission of the predicate acts."  Call v. Watts, No. 97-5406, 1998 WL 165131 (6th Cir. April 2, 1998) (citing Smallwood v. Jefferson County Gov't, 743 F. Supp. 502, 504 (W.D. Ky. 1990)).  This same reasoning would apply to the Sheriff's Office.

Plaintiff notes that the Sixth Circuit has held that a county sheriff's office can constitute an "enterprise" for purposes of RICO.  See United States v. Davis, 707 F.2d 880, 882-83 (6th Cir. 1983).  But the question of whether a sheriff's office can constitute an "enterprise" for purposes of RICO is clearly distinct from the question of whether it is a "person" subject to civil

liability for violations of the RICO statute.  Because <u>Call</u> governs this issue, the Court grants

Defendants' motion to dismiss the RICO claims brought against the Washington County

Sheriff's Office and against Jobes and Gherke in their official capacities.

### b.    Against Individual Officers

The Court now turns to the RICO claims asserted in Counts 6 and 7 against Jobes and

Gherke in their individual capacities.  In order to state a violation of RICO, 18 U.S.C. § 1962(c),

Plaintiff must plead the following elements:  "(1) conduct, (2) of an enterprise, (3) through a

pattern (4) of racketeering activity."  <u>Sedima S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496

(1985).  Defendants argue that Plaintiff's allegations regarding the existence of an "enterprise"

are insufficient.  The Court agrees.

An "enterprise" is defined as "any individual, partnership, corporation, association, or

other legal entity, and any union or group of individuals associated in fact although not a legal

entity."  18 U.S.C. § 1961(4).  This definition includes two types of enterprises -- legal entities

and "illegitimate associations-in-fact."  <u>Russello v. United States</u>, 464 U.S. 16, 24 (1983).  <u>See</u>

<u>also</u> <u>United States v. Turkette</u>, 452 U.S. 570, 581-582 (1981).

According to Plaintiff, Defendants Jobes and Gherke formed an association-in-fact

enterprise.  The Sixth Circuit has held that an association-in-fact enterprise can be established by

showing: "1) that the associated persons formed an ongoing organization, formal or informal; 2)

that they functioned as a continuing unit; and 3) that the organization was separate from the

pattern of racketeering activity in which it engaged."  <u>VanDenBroeck v. Commonpoint</u>

21

Mortgage Co., 210 F.3d 696, 699 (6th Cir. 2000) (citing Frank v. D'Ambrosi, 4 F.3d 1378, 1386

(6th Cir. 1993)).  These elements:

> require a certain amount of organizational structure which
> eliminates simple conspiracies from [RICO's] reach.  That is,
> simply conspiring to commit a fraud is not enough to trigger the
> Act if the parties are not organized in a fashion that would enable
> them to function as a racketeering organization for other purposes.

VanDenBroeck, 210 F.3d at 699.  In other words, the enterprise must have an existence separate

and apart from the acts of racketeering in which it allegedly engaged, and there must be evidence

of a structural "chain of command" or decision-making hierarchy to distinguish it from a mere

conspiracy.  Id. at 699-700.  See also United States v. Johnson, 440 F.3d 832, 840 (6th Cir. 2006)

(quoting United States v. Rogers, 89 F.3d 1326, 1337 (7th Cir. 1996)).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain

statement of the claim showing that the pleader is entitled to relief."  However, the complaint

"must contain either direct or inferential allegations respecting all the material elements to

sustain a recovery under *some* viable legal theory."  Scheid, 859 F.2d at 436.  In Begala v. PNC

Bank, Ohio, 214 F.3d 776 (6th Cir. 2000), the Court held that "[a] properly pled RICO claim

must cogently allege activity 'that would show ongoing, coordinated behavior among the

defendants that would constitute association-in-fact.'"  Id. at 781 (citing Frank, 4 F.3d at 1386).

Even indulging all reasonable inferences that might be drawn from the pleading, the Court

agrees with Defendants that Plaintiff's allegations are insufficient to support a finding that Jobes

and Gherke formed an association-in-fact enterprise.

22

Plaintiff essentially alleges that Jobes and Gherke, who worked together at the Washington County Sheriff's Office, engaged in an illegal search and seizure, and then conspired to cover up their alleged wrongdoing to obtain Plaintiff's conviction.  Plaintiff alleges that, on the night of his arrest and on the day of the suppression hearing, they coordinated their efforts to achieve this common goal.

The Amended Complaint contains no factual allegations from which it could be inferred that this alleged "enterprise" was an ongoing organization with the requisite organizational structure, or that it existed separate and apart from this one incident tied to Plaintiff's arrest and prosecution.  As the Northern District of Ohio noted in City of Cleveland v. Woodhill Supply, Inc., 403 F. Supp. 2d 631 (N.D. Ohio 2005), "[i]f the 'enterprise' is just a name for the fraudulent acts alleged, or for the agreement to commit these acts, then it is not an enterprise within the meaning of the statute.'" Id. at 637 (quoting Sears Roebuck & Co. v. Emerson Elec. Co., 2003 WL 60573, at *5 (N.D. Ill. Jan. 7, 2003)).  Because Plaintiff's complaint does not allege that the "enterprise" existed for any purpose other than to secure his conviction, and because there are no allegations to suggest that this was an ongoing organization, the Court finds that Plaintiff has failed to sufficiently plead the existence of an association-in-fact enterprise.

In the Court's view, dismissal of the RICO claims against Jobes and Gherke is also warranted because Plaintiff has failed to adequately allege a pattern of racketeering activity.  By statute, a "pattern of racketeering activity" requires at least two acts of racketeering activity within a period of ten years.  See  18 U.S.C. § 1961(5).  In H.J. Inc. v. Northwestern Bell Telephone Co., 429 U.S. 229 (1989), the Supreme Court noted that proof of two predicate acts

may not be sufficient to establish the requisite pattern.  Not only must the predicate acts be related but, because "Congress was concerned in RICO with longterm criminal conduct," the plaintiff must demonstrate continuity of racketeering activity.  Id. at 239-40, 242.  Such continuity may be demonstrated either through "a series of related predicates extending over a substantial period of time" or through "past conduct that by its nature projects into the future with a threat of repetition."  Id. at 241-42.  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct" are insufficient to demonstrate the requisite continuity.  Id. at 242.  See also Moon v. Harrison Piping Supply, 465 F.3d 719 (6th Cir. 2006) (predicate acts spanning 9 months insufficient to demonstrate continuity); Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir.), cert. denied, 513 U.S. 1017 (1994) (predicate acts spanning 17 months did not satisfy continuity requirement); Vild v. Visconsi, 956 F.2d 560, 569 (6th Cir.), cert. denied, 506 U.S. 832 (1992) (predicate acts spanning 7 months did not satisfy continuity requirement); American Eagle Credit Corp. v. Gaskins, 920 F.2d 352, 354-55 (6th Cir. 1990) (5-month period of criminal activity insufficient to constitute a pattern of racketeering).

Plaintiff alleges that Jobes and Gherke committed four  predicate acts of racketeering activity during a period of time spanning from the date of his arrest, September 8, 2003, through the date of the hearing on his motion to suppress, December 22, 2003.[6]  Clearly, this three or four month period is insufficient to demonstrate the requisite continuity.

---

[6]  These include obstruction of justice (18 U.S.C. § 1503), obstruction of criminal investigations (18 U.S.C. § 1510), obstruction of State or local law enforcement (18 U.S.C. § 1511), and tampering with a witness (18 U.S.C. § 1512).  Am. Compl. ¶¶ 71, 78.

Moreover, none of the allegations in the complaint supports an inference that there was any threat that the alleged pattern of racketeering activity would, by its nature, continue into the future. Plaintiff alleges that Defendants had one goal, to facilitate his illegal arrest and prosecution. That goal was apparently accomplished when he pleaded no contest to the charge of disorderly conduct. There is no suggestion that they planned to commit any other illegal acts. The allegations contained in the complaint clearly focus on a single scheme with a single injury to a single victim. As the Court noted in H.J. Inc., the combination of these factors "makes it virtually impossible" for plaintiff to state a RICO claim. 465 F.3d at 726 (quoting Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C. Cir. 1995)).

The viability of Plaintiff's claim of conspiracy under 18 U.S.C. § 1962(d) is tied to the viability of his § 1962(c) claim. Because he has failed to state a substantive RICO claim, dismissal of the RICO conspiracy claim is also proper. See Broad, Vogt & Conant, Inc. v. Alsthom Automation, Inc., 200 F. Supp. 2d 756, 761 (E.D. Mich. 2002); Miller v. Norfolk Southern Ry. Co., 183 F. Supp. 2d 996, 1003 (N.D. Ohio 2002) (holding that failure to state a claim under § 1962(c) constitutes failure to state a claim under § 1962(d)).

For all of these reasons, the Court finds that Defendants Jobes and Gherke are entitled to dismissal of the RICO claims brought against them in their individual capacities.

**IV.    Conclusion**

The Court rejects Defendants' argument that Plaintiff failed to follow the proper procedure in amending his complaint. Nevertheless, because the Court agrees that Plaintiff has

failed to state any claim upon which relief can be granted, the Court **GRANTS** Defendants'

motion to dismiss the Amended Complaint. (Record at 14).

**IT IS SO ORDERED.**

Date: August 16, 2007                    **/s/ John D. Holschuh**
                                         John D. Holschuh, Judge
                                         United States District Court